PETITION FOR REHEARING OR REHEARING EN BANC

---

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Nos. 09-3087, 10-3048 & 10-3066

---

UNITED STATES OF AMERICA, Appellee,

v.

LONNELL GLOVER,
JONATHAN E. WRIGHT, Appellants.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

RONALD C. MACHEN JR.,
United States Attorney.

ELIZABETH TROSMAN,
* SUZANNE GREALY CURT,
Assistant United States Attorneys.

* Counsel for Oral Argument

555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
(202) 252-6829

Cr. No. 09-129

## Introduction

In a decision that misconstrued a federal statute, a federal rule, and Supreme Court precedents, a panel of this Court has overturned drug-trafficking convictions because it concluded that court-authorized interceptions through a listening device ("the truck bug") that was monitored in this district but installed in Maryland, violated Fed. R. Crim. P. 41 and Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510 et seq. ("Title III"). United States v. Glover and Wright, 736 F.3d 509 (D.C. Cir. 2013). Rehearing or rehearing en banc is warranted because the court committed three significant errors that implicate circuit conflicts. First, the panel imposed a novel territorial limitation on the authority of courts in this district to authorize the installation of listening devices outside of this district, even when the "interception," that is, the government's listening post, is in this jurisdiction. That holding is wrong and conflicts with the decisions of four other circuits. Second, having mistakenly found that the installation of the listening device was improperly authorized in this district, the panel compounded that error by erroneously ordering suppression under Title III. The panel broke with other circuits by holding that Title III required suppression whether or

not the territorial jurisdiction of the authorizing court is a core concern of the statute (and further erred by suggesting that it is). Finally, the court joined a circuit split over whether or not the objective good faith of law enforcement agents – who reasonably relied on judicial authorization for their conduct – precluded suppression under Title III. There is good reason to believe that Congress did not intend a statutory suppression remedy that goes farther that the Fourth Amendment exclusionary rule – yet the panel's holding does just that. These important rulings warrant reconsideration by the panel or the en banc court.

## Pertinent Facts

Lonnell Glover was a major drug dealer who sold drugs in the District of Columbia and Maryland. On March 19, 2007, in connection with an ongoing investigation of Glover, the Honorable Rosemary Collyer of this district issued a Title III order authorizing the government to install the truck bug, regardless of whether the truck was located in the District of Columbia, the District of Maryland, or the Eastern District of Virginia. The affidavit accompanying the application for the order explained that the truck was parked at BWI airport in

Maryland. On March 20, 2007, Judge Collyer amended the order to permit the agents to utilize the bug's GPS feature.[1] Later that day, agents entered Glover's truck at BWI airport, and installed the device. Once the device was activated, conversations that occurred in the truck were intercepted at an FBI listening post in the District of Columbia.

Based in part on evidence obtained from the truck bug, Glover and 15 other individuals were indicted for conspiracy to distribute PCP and heroin (the PCP case). Glover was convicted on November 3, 2008, and sentenced to life in prison. Glover's direct appeal in the PCP case, No. 10-3075, is pending, and briefing has been stayed in light of the panel's opinion in this case.

Glover and Wright were also indicted in the instant case (the cocaine case) based in part on evidence obtained from the truck bug. Glover and Wright were convicted of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, and Glover was sentenced to 121 months.

---

[1] The truck bug was a cell phone that was capable of recording conversations; it was also equipped with a GPS device. The government did not use any information obtained from the GPS device at trial and its use is not an issue in this appeal.

**Pertinent Proceedings in the District Court**

The suppression rulings at issue here were made by the Honorable Thomas Hogan in the PCP case, and were adopted by the Honorable Ellen Segal Huvelle in the cocaine case. In the PCP case, Glover filed two motions to suppress. One objected to the use of location evidence obtained from the GPS; the other objected to aural interceptions obtained from the truck bug. Neither pleading cited to Rule 41, and the truck-bug pleading did not raise a jurisdictional claim.

Judge Hogan held a hearing on the GPS motion on September 10, 2008. Glover's counsel briefly mentioned Rule 41's jurisdictional requirement. At the conclusion of the hearing, Judge Hogan orally denied Glover's motion to suppress data from the GPS device. In a separate opinion issued on October 23, 2008, Judge Hogan denied the motion to suppress evidence derived from the truck bug. At a July 30, 2009, hearing in the cocaine case, Judge Huvelle invited the defendants to present new claims that had not been addressed previously. Appellants raised no new arguments.

## The Panel's Opinion

The panel held that Rule 41 "partially implements" Title III, and relied on the jurisdictional requirement of Rule 41(b)(2) to find that, however 18 U.S.C. § 2518(3) is interpreted, the installation of a "mobile interception device" cannot be valid unless the property on which the device is to be installed is within the authorizing court's jurisdiction at the time the order is issued. 736 F.3d at 512, 514-515. The panel thus found the location of the listening post to be irrelevant. Id. at 514-515. The panel then held (at 8-9) that, although Title III defects that do not affect core concerns do not require suppression under 18 U.S.C. § 2518(10)(a)(i), which pertains to "unlawfully intercepted" communications, that exception does not apply to section (ii), which pertains to an interception order that is "insufficient on its face." Id. at 515. The panel also held that territorial jurisdiction is a core concern of Title III, and that that suppression was mandated by section (ii), because the jurisdictional defect rendered the warrant facially invalid. Id. The panel found that the district court committed plain error, and that the good faith exception to the exclusionary rule did not apply. Id. at 515-516.

## Discussion

Territorial Jurisdiction: Title 18 U.S.C. § 2518(3) allows a court to issue an order for an:

> interception . . . within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction). . . .

Based on the language preceding the parenthetical, the order issued by Judge Collyer was valid because the "interception," as that term is defined in Title III, occurred in this jurisdiction.[2]

Every circuit court to have addressed the issue has held that an interception order may be issued either in the jurisdiction where the conversations take place or in the jurisdiction where the listening post is located.[3] The panel dismissed those cases because they "addressed phone taps." 736 F.3d at 514. That distinction is not relevant because

---

[2] Because the truck bug was a "mobile interception device," the interception was also arguably authorized based on the language in the parenthetical. But, as the panel recognized, that language is less than clear, and this Court does not need to address its meaning.

[3] See United States v. Luong, 471 F.3d 1107, 1109 (9th Cir. 2006); United States v. Ramirez, 112 F.3d 849, 852 (7th Cir. 1997); United States v. Denman, 100 F.3d 399, 404 (5th Cir. 1996) ; United States v. Rodriguez, 968 F.2d 130, 136 (2d Cir. 1992).

the definition of "intercept" in Title III does not depend on the instrument through which the conversations are heard. "[I]ntercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device. 18 U.S.C. § 2510(4). The listening post cases make clear that Judge Collyer could authorize the interception regardless of the truck's location because the aural acquisition took place in this district. Further, in Dalia v. United States, 441 U.S. 238 (1979), the Court held that Title III authorizes covert entries for the purpose of installing electronic surveillance equipment. Although Dalia did not address territorial jurisdiction, there is nothing in its holding to suggest that a judge's authority is limited to covert entries that will occur within her jurisdiction.

The panel found jurisdictional error by misinterpreting Title III, and by erroneously importing the territorial limits of a court's authority under Rule 41 into its Title III analysis. The panel cited no authority for its holding, see 736 F.3d at 512, 515, that Rule 41 "partially implements" Title III, and Dalia belies this conclusion because the

Supreme Court in Dalia explicitly stated that its Title III holding was independent of Rule 41:

> As we have concluded that Title III authorizes courts to approve covert entries to install electronic surveillance equipment, we do not consider whether such authority also is conferred by other federal enactments, such as Fed. Rule Crim. Proc. 41 or the All Writs Act, 28 U.S.C. § 1651.

441 U.S. at 254 n.16. This language strongly supports the conclusion that the authority to issue orders authorizing the installation of listening devices is not limited by the provisions of Rule 41. Moreover, Rule 41(a)(1) explicitly states that the Rule's provisions do not modify "any statute regulating search or seizure."

A further indication that Congress did not intend to engraft Rule 41's requirements onto Title III is that for each function set forth in Rule 41, there is a parallel provision in Title III.[4] Further, when Congress enacted the Stored Communications Act, which is closely related to Title III, it specifically stated that the government could compel the disclosure of information regarding stored communications

---

[4] See, e.g., Rule 41(d)(2),(3) (proscribing procedures for applying for a warrant), and 18 U.S.C. § 2518(1),(2) (same); Rule 41(e)(2) (stating requirements for contents of warrant), and 18 U.S.C.§ 2518(6)(8) (same).

"pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure." 18 U.S.C. § 2703(a), (b)(1)(A), (c)(1)(A). Notably, there is no similar provision in Title III. In sum, the panel's conclusion that Rule 41 "partially implements" Title III is inconsistent with Title III, Rule 41, and Dalia.[5]

Core Concerns: The panel also erred in rejecting the government's alternative argument that suppression was not required because any jurisdictional error did not reflect a core concern of Title III. Title III has dual purposes: (1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and

[5] Further, any error here -- contrary to the panel's conclusion (at 12) -- was neither plain nor obvious, see United States v. Olano, 507 U.S. 725, 734 (1993), let alone "a blatant disregard of a district judge's jurisdictional limitation." Until the panel issued its opinion, there was no authority holding that Rule 41(b)(2) applies in these circumstances or that a Title III order cannot issue in the jurisdiction where the listening post exists. The panel also erred in applying Olano's fourth prong. Even if the "wrong" judge signed the order, the fairness, integrity or public reputation of judicial proceedings were not impugned. No Fourth Amendment rights were affected, probable cause existed for the intercept, and Judge Collyer was a neutral and detached magistrate. Also, by concluding (at 13) that the fourth prong was met because the "evidence from the intercept was powerful evidence leading to the convictions," the panel conflated Olano's third and fourth prongs.

oral communications may be authorized. S.Rep. No. 90-1097 (1968), as reprinted in 1968 U.S.C.C.A.N. 2112, 2185. The statute addresses these concerns by requiring, inter alia, approval by high-level Justice Department officials, demonstrations of necessity, and minimization of overheard conversations. But, it does not mandate suppression for all violations of Title III; suppression is mandated only where core concerns are at issue. See United States v. Giordano, 416 U.S. 505, 528 (1974). Thus, in Giordano, 416 U.S. at 528, the Court explained that evidence derived from an interception order that had been approved by an unauthorized DOJ official required suppression under 18 U.S.C. § 2518(10)(a)(i), because the approval requirement played a "central role" in Title III's statutory scheme.[6]

Here, the panel misread Giordano and created a conflict with other circuits by holding that the core-concern exception cannot apply to

---

[6] Giordano, 416 U.S. at 527, also stated:

> [W]e think Congress intended to require suppression where there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.

a warrant that is "insufficient on its face" under 18 U.S.C. § 2518(10)(a)(ii). This conclusion was unwarranted. Giordano described all three subsections of § 2515(10)(a) as encompassing "statutory" violations. Even accepting the panel's conclusion that section (ii) must be construed so as not to be duplicative of section (i), there simply is nothing in Giordano to suggest that the Court would not consider statutory violations that fall under section (i) as being subject to the core concerns test, but not those that fall under section (ii). Giordano simply does not hold that all violations falling under (ii) must be remedied by suppression.

Further, other circuits have held that section (ii) violations do not automatically warrant suppression. See, e.g., United States v. Traitz, 871 F.2d 363, 379 (3rd Cir. 1989); United States v. Vigi, 515 F.2d 290, 292-293 (6th Cir. 1975); United States v. Robertson, 504 F.2d 289, 292 (5th Cir. 1975). See also Adams v. Lankford, 788 F.2d 1493, (11th Cir. 1986)(fact that state judge from wrong jurisdiction issued wiretap order did not implicate core concerns of Title III).[7]

---

[7] In United States v. Moore, 41 F.3d 370, 376 (8th Cir. 1994), the court also held that because § 2518(10)(a) states that suppression can be (continued...)

Support for the panel's further conclusion that territorial jurisdiction is a core concern of Title III is lacking as well. The panel simply agreed with the Fifth Circuit's holding in United States v. North, 728 F.3d 429 (5th Cir. 2013). However, by the time Glover was issued, the portion of the North opinion on which the panel relied had been withdrawn sua sponte. Two weeks before Glover issued, the Fifth Circuit revised its opinion to omit the discussion of core concerns from the majority opinion; the core concern discussion was thereafter relegated to a concurring opinion by a single judge. United States v. North, 735 F.2d 212 (5th Cir. 2003).[8] In contrast, in Adams, supra, the Eleventh Circuit held that territorial jurisdiction is not a core concern of Title III and that Congress' concern for privacy was not implicated where phone taps were requested by a prosecutor and authorized by a judge who were not in the same jurisdiction as the tapped phones. Id. at

(...continued)
ordered "if the [suppression] motion is granted" (emphasis added) judges have the discretion to forgo suppression in appropriate instances.

[8] The concurring judge expressed the belief that territorial jurisdiction implicates a core concern of Title III -- which the judge maintained was avoiding forum shopping -- while acknowledging that there was no legislative history supporting that conclusion. North, 735 F.2d at 219.

1498. Adams also observed that Congress' intention to "fix the responsibility for decisions to apply for and authorize wiretap orders," would be thwarted by requiring different prosecutors and judges to request and authorize orders relating to a single investigation.[9] Here, that Congressional intent would be thwarted by requiring a judge in a different jurisdiction to issue the truck bug; Judge Collyer was particularly qualified to authorize the truck bug by virtue of her familiarity with the investigation and the previous electronic surveillance that led to the Title III request.

Good Faith: Finally, the panel's holding (at 12) that the good faith exception to the exclusionary rule does not apply to a facially insufficient warrant conflicts with other circuit decisions and lacks foundation. The panel's conclusion that the exception would not apply

[9] Similarly, in United States v. Rodriguez, 734 F.Supp. 116, 120 (S.D.N.Y. 1990), aff'd 968 F.2d 130 (2d Cir. 1992), the district court found that suppression was not required where a judge in the Southern District of New York authorized a wiretap on a phone located in New Jersey; the court relied on Adams to find that jurisdiction was not a core concern of Title III. When affirming the district court, the Second Circuit held that there are "sound policies reasons for permitting a court in the jurisdiction where all of the captured conversations are to be heard to grant the authorization. United States v. Rodriguez, 968 F. 2d 130, 136 (2d Cir. 1992).

here in any event here was wrong as well because the location of the truck was disclosed to the judge, no court previously had indicated that what was done here was not proper, and the interception was done in conformance with a court order. Thus, the panel erred by finding that the officers did not act in good faith, and no deterrent purpose would be served by suppression in these circumstances.

The Eighth and Eleventh Circuits have both applied the good faith exception to Title III violations in published decisions. See United States v. Moore, 41 F.3d 370, 374, 376 (8th Cir. 1995); United States v. Malekzadeh, 855 F.2d 1492, 1497 (11th Cir. 1988).[10] The panel relied on one contrary decision, United States v. Rice, 478 F.3d 704 (6th Cir. 2007), but that case is both distinguishable and lacking in foundation.

Rice upheld the suppression of wiretap evidence after the district court found that the affiant had recklessly misled the issuing court

---

[10] See also United States v. Brewer, 204 Fed. Appx. 205 (4th Cir. 2006) ("affiants were entitled to rely on the facially valid wiretap orders pursuant to the good faith exception"; relying on Moore and Malekzadeh); United States v. Vest, 842 F.3d 1319, 1333-34 (1st Cir. 1988) (citing Leon, and affirming district court refusal to dismiss prosecution where indictment based in part on evidence obtained in violation of Title III).

regarding Title III's necessity requirement. Id. at 709-711. Here, as noted above, the agents did not mislead the court.

Rice also held, as did the panel here, that Title III mandated suppression without exception. 478 F.3d at 712. As explained above, that ruling conflicts with Giordano and the other circuit decisions that have required suppression only where Title III core concerns are at issue. Moreover, the reckless misrepresentations at issue in Rice, unlike the alleged mistake here, arguably implicated core concerns in any event.

## Conclusion

Wherefore, appellee respectfully requests rehearing or rehearing en banc.

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney

ELIZABETH TROSMAN
Assistant United States Attorney

/s/

SUZANNE GREALY CURT, D.C. Bar #349654
Assistant United States Attorney
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
(202) 252-6829

regarding Title III's necessity requirement. Id. at 709-711. Here, as noted above, the agents did not mislead the court.

Rice also held, as did the panel here, that Title III mandated suppression without exception. 478 F.3d at 712. As explained above, that ruling conflicts with Giordano and the other circuit decisions that have required suppression only where Title III core concerns are at issue. Moreover, the reckless misrepresentations at issue in Rice, unlike the alleged mistake here, arguably implicated core concerns in any event.

## Conclusion

Wherefore, appellee respectfully requests rehearing or rehearing en banc.

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney

ELIZABETH TROSMAN
Assistant United States Attorney

/s/
SUZANNE GREALY CURT, D.C. Bar #349654
Assistant United States Attorney
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
(202) 252-6829

## Certificate of Service

I HEREBY CERTIFY that, on this 22nd day of January, 2014, I caused the foregoing Petition for Rehearing and Rehearing En Banc to be served by the Court's ECF system on Adam H. Kurland, Esquire, Howard University School of Law, 2900 Van Ness Street, N.W., Washington, D.C. 20008 (counsel for appellant Glover), and Robert S. Becker, Esquire, 5614 Connecticut Avenue, N.W. No. 155, Washington, D.C. 20015 (counsel for appellant Wright).

/s/

SUZANNE GREALY CURT, D.C. Bar #349654
Assistant United States Attorney
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
(202) 252-6829

# ADDENDUM FOR APPELLEE

# Index

Certificate of the Parties........................................................A-1

Opinion in United States v. Lonnell Glover, Jonathan E. Wright, Nos. 09-3087, 10-3048 & 10-3066..................................................A-2

## Certificate of Parties

Pursuant to Circuit Rules 28(a)(1), and 35, the United States of America hereby states as follows:

The parties to this appeal are appellants, Lonnell Glover and Jonathan E. Wright, and appellee, the United States of America. There are no amici.

H

United States Court of Appeals,
District of Columbia Circuit.
UNITED STATES of America, Appellee
v.
Lonnell GLOVER, Appellant.

Nos. 09–3087, 10–3048, 10–3066.
Argued Sept. 23, 2013.
Decided Nov. 8, 2013.

**Background:** Defendants were convicted in the United States District Court for the District of Columbia of conspiring to possess and distribute more than five kilograms of cocaine. Defendants appealed.

**Holdings:** The Court of Appeals, Silberman, Senior Circuit Judge, held that:
(1) warrant authorizing electronic bug in one defendant's truck was insufficient on its face, and
(2) district court's failure to preclude evidence obtained from that warrant constituted plain error.

Reversed and remanded.

West Headnotes

**[1] Criminal Law 110 ⚷1151**

110 Criminal Law
110XXIV Review
110XXIV(N) Discretion of Lower Court
110k1151 k. Time of trial; continuance. Most Cited Cases

A court of appeals can only reverse a trial court's decision to dismiss an indictment without prejudice under the Speedy Trial Act for an abuse of discretion. 18 U.S.C.A. § 3162(a)(2).

**[2] Criminal Law 110 ⚷1158.18**

110 Criminal Law
110XXIV Review
110XXIV(O) Questions of Fact and Findings
110k1158.18 k. Speedy trial. Most Cited Cases

When the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance, for purposes of determining whether to dismiss an indictment with or without prejudice under the Speedy Trial Act, should not lightly be disturbed. 18 U.S.C.A. § 3162(a)(2).

**[3] Criminal Law 110 ⚷577.10(1)**

110 Criminal Law
110XVIII Time of Trial
110XVIII(B) Decisions Subsequent to 1966
110k577.10 Factors Affecting Application of Requirements in General
110k577.10(1) k. In general; balancing test. Most Cited Cases

A court is required to balance four factors in determining whether a defendant's Sixth Amendment right to a speedy trial was violated: whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result. U.S.C.A. Const.Amend. 6.

**[4] Criminal Law 110 ⚷392.21**

110 Criminal Law
110XVII Evidence
110XVII(I) Competency in General
110k392.1 Wrongfully Obtained Evidence
110k392.21 k. Electronic surveillance; telecommunications. Most Cited Cases

**Telecommunications 372 ⚷1463**

372 Telecommunications
372X Interception or Disclosure of Electronic Communications; Electronic Surveillance

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

372X(B) Authorization by Courts or Public Officers
372k1463 k. Judicial authorization in general. Most Cited Cases

Warrant signed by a judge in the District of Columbia authorizing the Federal Bureau of Investigation (FBI) to place an electronic bug in defendant's truck parked in Maryland, outside the district court's jurisdiction, was insufficient on its face under statute authorizing wiretaps or electronic bugs, and therefore suppression of evidence obtained pursuant to the warrant was the mandatory remedy. 18 U.S.C.A. §§ 2515, 2518.

**[5] Criminal Law 110 ⚷392.21**

110 Criminal Law
110XVII Evidence
110XVII(I) Competency in General
110k392.1 Wrongfully Obtained Evidence
110k392.21 k. Electronic surveillance; telecommunications. Most Cited Cases

Suppression is the mandatory remedy when evidence is obtained pursuant to a facially insufficient warrant under statute authorizing wiretaps or electronic bugs. 18 U.S.C.A. § 2518(10)(a).

**[6] Telecommunications 372 ⚷1463**

372 Telecommunications
372X Interception or Disclosure of Electronic Communications; Electronic Surveillance
372X(B) Authorization by Courts or Public Officers
372k1463 k. Judicial authorization in general. Most Cited Cases

A judge cannot authorize the interception of communications under statute authorizing wiretaps or electronic bugs if the mobile interception device was not validly authorized, and a device cannot be validly authorized if, at the time the warrant is issued, the property on which the device is to be installed is not located in the authorizing judge's jurisdiction. 18 U.S.C.A. § 2518(3).

**[7] Criminal Law 110 ⚷1036.1(4)**

110 Criminal Law
110XXIV Review
110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
110XXIV(E)1 In General
110k1036 Evidence
110k1036.1 In General
110k1036.1(3) Particular Evidence
110k1036.1(4) k. Wrongfully obtained evidence. Most Cited Cases

District court's failure to preclude evidence obtained pursuant to warrant authorizing the Federal Bureau of Investigation (FBI) to place an electronic bug in one defendant's truck was plain error, in defendants' prosecution for a drug conspiracy charge; the warrant was insufficient on its face, which required automatic suppression under the relevant statute, and the evidence was, in the words of the prosecuting attorney at trial some of the "most incriminating" and "most powerful" evidence at trial, and there was a high likelihood that the evidence affected the outcome. 18 U.S.C.A. §§ 2515, 2518.

**[8] Criminal Law 110 ⚷622.7(7)**

110 Criminal Law
110XX Trial
110XX(A) Preliminary Proceedings
110k622 Joint or Separate Trials of Codefendants
110k622.7 Grounds for Severance or Joinder
110k622.7(7) k. Inculpation of defendant by codefendant; conflicting testimony. Most Cited Cases

District judge acted within his discretion in denying defendant severance in a drug conspiracy prosecution, even though his co-defendant's strategy was to blame him. Fed.Rules Cr.Proc.Rule 14, 18 U.S.C.A.

**[9] Criminal Law 110 ⚷788**

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

110 Criminal Law
110XX Trial
110XX(G) Instructions: Necessity, Requisites, and Sufficiency
110k788 k. Failure to call witness or produce evidence. Most Cited Cases

A "missing witness" argument, that a person with apparent knowledge of relevant events was not called as a witness, is only permitted after a showing that the opposing party has the unique ability to produce the witness.

***510** Appeals from the United States District Court for the District of Columbia (No. 1:09–cr–00129). Robert S. Becker, appointed by the court, argued the cause and filed the joint brief for appellant Jonathan Wright.

Adam H. Kurland, appointed by the court, argued the cause and filed the joint brief for appellant Lonnell Glover.

John P. Gidez, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Ronald C. Machen Jr., U.S. Attorney, and Elizabeth Trosman, Suzanne Grealy Curt, Anthony F. Scarpelli, and John K. Han, Assistant U.S. Attorneys.

Before: BROWN, Circuit Judge, and EDWARDS and SILBERMAN, Senior Circuit Judges.

Opinion for the Court filed by Senior Circuit Judge SILBERMAN.

SILBERMAN, Senior Circuit Judge:

Appellants Lonnell Glover and Jonathan Wright were convicted of conspiring to possess and distribute more than five kilograms of cocaine. They appeal on a number of grounds. We agree that with respect to one of their claims their convictions must be reversed; the district court erroneously admitted evidence obtained pursuant to a "facially insufficient" warrant.

I.

Although the convictions in this case were for a conspiracy to distribute cocaine, the FBI's initial investigation was directed at Glover's distribution of PCP and heroin. The FBI obtained a warrant to tap Glover's cell phone, but Glover was careful to speak only in code when using the cell phone. It was noticed, however, that Glover had frequent meetings in his truck, so the FBI obtained a warrant from Judge Collyer of the District Court for the District of Columbia to place an audio recording device in the truck. Unfortunately, the truck was parked at the Baltimore BWI Airport, and the FBI's affidavit in support of the warrant made that plain. Nevertheless, the warrant explicitly stated that FBI agents could forcibly enter the truck, regardless of whether the vehicle was located in the District of Columbia, District of Maryland, or the Eastern District of Virginia.

***511** The bug worked. Glover was recorded discussing his PCP-heroin business, as well as his plans to use funds from that business to begin distributing cocaine. The cocaine—which was to come from a Bahamian known as "Foot"—would be driven to Washington from Florida. Jonathan Wright was also overheard in the truck, taking part in the conspiracy by joining Glover's plans to import the cocaine from the Bahamas.

The cocaine conspiracy began to unravel in June of 2007, when another co-conspirator was apprehended at Miami International Airport, attempting to smuggle large quantities of cash into the Bahamas. A few weeks later, on June 19, Glover was arrested in connection with his earlier PCP and heroin-related activities. Wright was finally arrested for his role in the cocaine conspiracy on May 14, 2008.

Glover was charged and convicted on PCP charges in a separate trial. Both appellants, however, were indicted for the cocaine conspiracy. The district judge held that the government had

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

violated the Speedy Trial Act, and dismissed the indictments without prejudice. But the government reindicted appellants and they were then convicted by a jury. This appeal followed.

II.

Although we reverse the conviction based on a defective warrant, that would still permit a new trial (assuming the government has adequate non-tainted evidence), so it is necessary to confront, at the outset, appellants' argument that their indictment should have been dismissed because of the government's violation of the Speedy Trial Act or—in the case of Wright—a related claim that the Sixth Amendment was violated.

The Speedy Trial Act requires a trial court to dismiss an indictment when the government fails to bring the defendant to trial within 70 days, not counting certain "excludable days." 18 U.S.C. § 3162(a)(2). The district judge determined—and this is undisputed—that the government had, indeed, violated the Act; accordingly, he dismissed the indictments. Appellants argue that the court erred, however, in dismissing the indictments without prejudice.

The Act lists certain (non-exclusive) factors that a trial court must consider in determining whether to dismiss an indictment with or without prejudice. Those are: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." *Id.*

[1][2] But our review is limited; we can reverse the trial court's decision only for an abuse of discretion. "[W]hen the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *See United States v. Taylor,* 487 U.S. 326, 337, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988). We easily conclude the district judge's decision meets that standard.

Appellants argue that their crime was not "serious," that the judge placed undue emphasis on the inadvertent nature of the government's violation, and that a dismissal without prejudice undermines the deterrent effect of the Act. These contentions are rather flimsy, and are, therefore, rejected. *See United States v. Wright,* 6 F.3d 811, 814 (D.C.Cir.1993) (concluding that conspiracy to distribute fifty grams of cocaine is a serious offense, that the inadvertence of the government's violation of the Act is a relevant factor, and that deterrence***512** does not require dismissal with prejudice in all cases).

[3] We also reject Wright's separate claim that even if the Speedy Trial Act was not violated, the Sixth Amendment was. The district court properly considered the four factors it was required to balance: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett v. United States,* 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). The court assumed *arguendo* that the delay was long, but noted that part of the delay was attributed to defendant and, most important, that the defendant had not shown that his defense was prejudiced because of the delay.[FN1]

FN1. Of course, there is inherent prejudice in loss of liberty, a factor that the district court properly noted.

* * *

[4] Which brings us to the core issue in this case—the allegedly illegal warrant. Appellants argue that the warrant was, in the language of the statute, "insufficient on its face" because it was signed by Judge Collyer, in the District of Columbia, authorizing the FBI to place the electronic bug in Glover's truck parked in Maryland—outside of the district court's jurisdiction. The government contends that it is

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

perfectly permissible for a district judge to authorize the placement of such an electronic listening device on a vehicle *anywhere in the United States.*

Appellants point to both Title III of the Omnibus Crime Control and Safe Streets Act of 1968,[FN2] which authorizes wiretaps or electronic bugs, as well as Rule 41 of the Federal Rules of Criminal Procedure, which partially implements the statute. But before discussing the statute and Rule 41 we are obliged to deal with the government's argument that our review should be limited to plain error because appellants never raised the jurisdictional objection to the truck bug. Although Glover's written motion to exclude the truck bug evidence before Judge Hogan [FN3] did not object to the warrant's alleged jurisdictional defect, at oral argument counsel seems to have asked that the motion be amended to include that ground for objection:

FN2. 18 U.S.C. § 2510 *et seq.*

FN3. That motion was made in the PCP case. The earlier PCP case is relevant here because Judge Huvelle—who presided over the trial that led to the convictions in this case—stated that she would follow Judge Hogan's previous evidentiary rulings, that she would not consider arguments previously made, and that she would treat all previous arguments as preserved.

> I would again move to amend the motion to include the ... truck bu [g].... I think ... that the requirements of ... 41(b) apply.... [T]he judge did not have the authority to issue a warrant to apply a device on a vehicle that's outside her jurisdiction. (Trial Tr. at 4–7, Sept. 10, 2008).

Admittedly, much of counsel's argument was focused on the device's integrated GPS feature and related Fourth Amendment concerns, which explains why Judge Hogan apparently did not perceive that counsel was also objecting to the facial sufficiency of the warrant. Although an argument need not be made in a written submission to be preserved for review, *see Fraternal Order of Police v. United States,* 173 F.3d 898, 902 (D.C.Cir.1999), counsel should, of course, make every effort to ensure that their arguments are ***513** clearly presented. The reason we require counsel to preserve arguments is to ensure that the district court has the opportunity to pass on those arguments in the first instance. This purpose is undermined if important arguments are not *clearly* presented. Ultimately, however, we need not decide whether the argument was preserved, because we find that appellants have demonstrated plain error. *See infra; In re Sealed Case,* 573 F.3d 844, 847 (D.C.Cir.2009) (A defendant's conviction may be reversed, even when he failed to preserve an argument, if he demonstrates plain error.).

The statute specifies that "[w]henever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any ... proceeding ... if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515. The statute further specifies that an

> aggrieved person ... may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—
>
> (i) the communication was unlawfully intercepted;
>
> (ii) the order of authorization or approval under which it was intercepted is *insufficient on its face;* or
>
> (iii) the interception was not made in conformity with the order of authorization or approval.

*Id.* § 2518(10)(a) (emphasis added).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

The relationship between paragraphs (i) and (ii) of the statute is, at first glance, rather puzzling, since it would appear that if the authorization was "insufficient on its face," the communication would be necessarily "unlawfully intercepted." But the Supreme Court has recognized a broad reading of paragraph (i) would render (ii) and (iii) redundant and "drained of meaning." *United States v. Chavez,* 416 U.S. 562, 575, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974); *accord United States v. Donovan,* 429 U.S. 413, 432, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977); *United States v. Giordano,* 416 U.S. 505, 525 n. 14, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974); *cf. United States v. Johnson,* 696 F.2d 115, 119–21 (D.C.Cir.1982) (interpreting analogous provisions of the District of Columbia Code). Therefore, the Court read paragraph (i) as requiring a broad inquiry into the government's intercept procedures to determine whether the government's actions transgressed the "core concerns" of the statute, whereas (ii) is a mechanical test; either the warrant is facially sufficient or it is not. *See Giordano,* 416 U.S. at 527, 94 S.Ct. 1820.

[5] Although a number of our sister circuits have imported the core concerns test into paragraph (ii), we think this approach is contrary to the plain text of the statute. *See United States v. Traitz,* 871 F.2d 368, 379 (3d Cir.1989); *United States v. Vigi,* 515 F.2d 290, 293 (6th Cir.1975); *United States v. Robertson,* 504 F.2d 289, 292 (5th Cir.1974). Suppression is the mandatory remedy when evidence is obtained pursuant to a facially insufficient warrant. There is no room for judicial discretion. Indeed, applying the "core concerns" test to paragraph (ii) would turn the Supreme Court's approach on its head, elevating policy over text. In construing the phrase "unlawfully intercepted" in paragraph (i), the Supreme Court only turned to congressional policies *after* first applying traditional tools of statutory construction, which indicated that a limiting construction was necessary to avoid rendering paragraphs (ii) and (iii) "surplusage." *Giordano,* 416 U.S. at 526, 94 S.Ct. 1820; *see also D. Ginsberg & Sons v. Popkin,* 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704 (1932) (It is a "cardinal rule ***514** that, if possible, effect shall be given to every clause and part of a statute."). But applying the "core concerns" test to paragraph (ii) would actually treat that paragraph as "surplusage"—precisely what the Supreme Court tried to avoid in *Giordano.*

Turning then to the jurisdictional language of Title III, it permits a judge to "authoriz[e] or approv[e] interception of wire, oral, or electronic communications within the territorial jurisdiction of the court *in which the judge is sitting* (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction)." 18 U.S.C. § 2518(3) (emphasis added).

[6] To be sure, the parenthetical phrase is somewhat ambiguous. It seems reasonable to read the words "such jurisdiction" in the phrase as referring back to the jurisdiction in which the judge is sitting; i.e., in this case, the District of Columbia, since the provision mentions no other jurisdiction. It is also possible that the phrase, by implication, refers to the jurisdiction in which the mobile interception device is installed. Under either reading, the parenthetical makes clear that a judge cannot authorize the interception of communications if the mobile interception device was not validly authorized, and a device cannot be validly authorized if, at the time the warrant is issued, the property on which the device is to be installed is not located in the authorizing judge's jurisdiction. A contrary reading would render the phrase "authorized by a Federal court within such jurisdiction" completely superfluous.

Indeed, the legislative history—ironically brought to our attention by the government in a 28(j) letter—confirms our conclusion that the government's interpretation is implausible. According to a Senate Judiciary Committee report, the objective of the language was to ensure that warrants remain effective in the event a target vehicle is moved out of the issuing judge's

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

jurisdiction *after* a warrant is issued, but before a surveillance device can be placed in the vehicle. S.Rep. No. 99–541, at 106(a) (1986).[FN4]

FN4. Presumably, the statute also permits a judge to authorize extensions to eavesdropping warrants after the vehicle has left the jurisdiction, so long as the listening device was lawfully placed.

The government points to a handful of cases in which courts have found that an "interception" under Title III takes place at both the location of the listening post and at the location of a tapped phone.[FN5] The government argues that in light of these cases, we should recognize that an issuing court has the power to authorize covert, trespassory entries onto private property, anywhere in the country, for purposes of placing surveillance equipment. The only jurisdictional limitation the government acknowledges is that the listening post must be located in the issuing court's jurisdiction.

FN5. *See United States v. Luong,* 471 F.3d 1107, 1109 (9th Cir.2006); *United States v. Ramirez,* 112 F.3d 849, 852–53 (7th Cir.1997); *United States v. Denman,* 100 F.3d 399, 403 (5th Cir.1996); *United States v. Rodriguez,* 968 F.2d 130, 136 (2d Cir.1992).

Of course, the statute does not refer to a "listening post," and none of the cases cited by the government addresses the jurisdiction of the issuing court to authorize law enforcement officers to covertly place a listening device on private property. All of those cases addressed phone taps, and as the Seventh Circuit explained, "a tap is not placed in the telephone handset itself; it is attached to the telephone line at some distance from the handset." ***515** *United States v. Ramirez,* 112 F.3d 849, 853 (7th Cir.1997); *see also Olmstead v. United States,* 277 U.S. 438, 464, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (holding that a wiretap was not a search because "[t]here was no entry of the houses or offices of the defendants"), *overruled in part by Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Whatever the merits of those decisions, they do not address the issue before us.[FN6]

FN6. For reasons that elude us, the government also cites *Dalia v. United States,* 441 U.S. 238, 251–54, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979), which holds only that Title III permits the surreptitious placement of a listening device on private property. It has nothing to do with the authorizing judge's geographical jurisdiction.

To the extent that there is uncertainty over the proper interpretation of the statute, Rule 41 of the Federal Rules of Criminal Procedure, which partially implements the statute, is crystal clear. It states that "a magistrate judge with authority *in the district* has authority to issue a warrant for a person or property outside the district if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed." Fed.R.Crim.P. 41(b)(2) (emphasis added). So, therefore, we have a warrant issued in our case which appears, on its face, to be in violation of the rule (and the statute).

The government's position regarding Rule 41 is, to put it kindly, rather confusing. Government counsel largely ignores the rule, but implicitly suggests that it is inconsistent with the statute, which, if true, would have presented us with a rather difficult problem. But as we have explained, Rule 41 and Title III are consistent in that they impose the same geographic limitations on warrants to install listening devices.

The government also argues that territorial jurisdiction is not a "core concern" of Title III, and that therefore suppression is not the appropriate remedy for the violation in this case. But, as we explained *supra,* the Supreme Court has repeatedly made clear that the "core concerns" test is a

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

construction of the term "unlawfully intercepted" in paragraph (i), not paragraph (ii). Even if we thought that an inquiry into the core concerns of the statute were permitted under paragraph (ii), we would, nevertheless, agree with the Fifth Circuit, which recently held that territorial jurisdiction *is* a core concern of Title III. *United States v. North,* 728 F.3d 429, 437 (5th Cir.2013).

Nor do we think that the jurisdictional flaw in the warrant can be excused as a "technical defect." It is true that several of our sister circuits have declined to hold paragraph (ii) violated because of technical errors. *See, e.g., United States v. Moore,* 41 F.3d 370, 375 (8th Cir.1994) (inadvertent failure of magistrate to sign order is a "mere technical defect" not warranting suppression); *United States v. Traitz,* 871 F.2d 368, 379 (3d Cir.1989) (inadvertent omission of one page of an order does not render the order insufficient on its face where the order still meets all statutory requirements).FN7 Even if we assume that an imperfect authorizing order could be thought facially sufficient, we do not see how a blatant disregard of a district judge's jurisdictional limitation can be regarded as only "technical."

FN7. We express no opinion on whether the defects in either of these cases should be viewed as merely technical.

The government's last refuge is a plea that we recognize the government's "good faith" and, therefore, import a good faith ***516** exception to Title III's remedy of suppression. The Supreme Court has done so regarding Fourth Amendment violations, *see United States v. Leon,* 468 U.S. 897, 911, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), where there is no explicit textual remedy. Here, of course, Congress has spoken: The statute requires suppression of evidence gathered pursuant to a facially insufficient warrant. *See United States v. Rice,* 478 F.3d 704, 711 (6th Cir.2007). In any event, it is quite a stretch to label the government's actions in seeking a warrant so clearly in violation of Rule 41 as motivated by "good faith."

[7] As we noted, *supra,* we think the failure to preclude the truck bug evidence was not only error—it was plain error. *See In re Sealed Case,* 573 F.3d at 851. Plain, because the language of Rule 41 is quite clear; indeed, the government's reluctance to come to grips with the language is, in that respect, quite revealing. And as we have explained, the statutory remedy is automatic. The last factor to be considered in plain error analysis—whether the error is prejudicial, and whether it seriously affected the "fairness, integrity, or public reputation of judicial proceedings"—is in this case indisputable. *United States v. Venable,* 269 F.3d 1086, 1089 (D.C.Cir.2001). The truck bug recordings were, in the words of the prosecuting attorney at trial, some of the "most incriminating" and "most powerful" evidence at trial, and there is a high likelihood that this evidence affected the outcome. *See United States v. Saro,* 24 F.3d 283, 287 (D.C.Cir.1994). Accordingly, appellants' convictions must be reversed.

* * *

[8] Appellants raise several additional arguments that would be relevant, assuming there is a new trial. Glover claims he was entitled to severance because Wright's defense strategy was to blame Glover; Wright's lawyer was, in effect, a "second" "prosecutor" who actually told the jury Glover would "get what's coming to him." Rule 14 of the Federal Rules of Criminal Procedure does permit a district judge to sever if a defendant appears to be prejudiced, but the question is left to the district judge's discretion in light of the "strong interests" in favor of joint trials. *See United States v. Celis,* 608 F.3d 818, 844 (D.C.Cir.2010). And the Supreme Court has explicitly held that severance is not required merely because one defendant accuses another of committing the crime. *See Zafiro v. United States,* 506 U.S. 534, 539–41, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). (It is instead perhaps prejudicial when damaging evidence is either admissible against only one defendant or exculpatory evidence is available to only one

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

defendant. *Id.* at 539, 113 S.Ct. 933.) It follows, therefore, that the district judge was well within his discretion in denying severance.

[9] There remain two evidentiary issues. The district judge refused to allow defense counsel to point out to the jury that two persons with apparent knowledge of relevant events had not been called as a witness. In other words, the trial judge determined that appellants wished to make a "missing witness" argument—asking the jury to infer that a missing witness would have supported a party's version of events. Such an argument is only permitted after a showing that the one party (the government here) has the unique ability to produce the witness, a showing the defendants did not make. *See United States v. Pitts,* 918 F.2d 197, 199 (D.C.Cir.1990). Appellants argue that they were not really seeking to make a missing witness argument, instead only highlighting the lack of certain evidence. Their preferred label does not change the substance of their argument; it was a missing witness argument ***517** by another name. Of course, this issue could be revisited if there is a new trial.

Perhaps more significant, Glover argues that the district court erred in admitting evidence of his PCP and heroin dealings as "inextricably intertwined" with evidence of the charged cocaine conspiracy. The conversations recorded by the truck bug did unquestionably include Glover describing plans to use revenues from the PCP-heroin dealing to fund the cocaine conspiracy, so we think they were legitimately described as inextricably intertwined. Although the precise contours of the inextricably intertwined doctrine are murky, *see United States v. Bowie,* 232 F.3d 923, 927–28 (D.C.Cir.2000), as to at least these recorded conversations, we think the district court's conclusion was correct. But that evidence would no longer be available at a new trial. Whether any equally probative evidence of the PCP-heroin dealings would be admissible is not really before us. If the government does attempt to introduce additional "other crimes" evidence at a retrial, we encourage the district court to address Rule 404(b) before applying the inextricably intertwined doctrine, as there is a "danger that finding evidence 'inextricably intertwined' may too easily slip from analysis to mere conclusion." *Id.* at 928.

III.

For the foregoing reasons, we reverse appellants' convictions and remand for a new trial.

*So ordered.*

C.A.D.C.,2013.
U.S. v. Glover
736 F.3d 509

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.